DECISION
This matter is before the Court on Rhode Island Council 94 AFSCME, AFL-CIO, Local 2881's ("Union") Petition to Confirm an Arbitrator's Award, which was issued December 3, 2002. The Arbitrator's Award ("Award") ordered the State of Rhode Island, Department of Environmental Management ("State") to vacate the position of Environmental Planner and to interview the four bargaining unit applicants to determine their qualifications for said position. The State objects to the Union's Petition, claiming that as the position of Environmental Planner has been abolished, the Award is moot. Jurisdiction is pursuant to G.L. 1956 § 28-9-14. For the reasons set forth below, this Court confirms the Award.
 Facts and Travel[1]
On or about August 29, 2000, the State posted an opening for the position of Environmental Planner in the Department of Environmental Management. The vacancy notice provided in pertinent part the following:
 "DUTIES/RESPONSIBILITIES: In the various areas of environmental planning, to be responsible for the preparation of implementation studies, special projects and phases of major studies; and to do related work as required.
 EDUCATION/EXPERIENCE/SPECIAL REQUIREMENTS: (A class specification describing the duties of the position and the minimum qualifications will be furnished upon request.) EDUCATION: Such as may have been gained through: graduation from a college of recognized standing with a degree in planning with a physical or design emphasis, landscape, architecture, geography, natural resources, civil or environmental engineering, soil science or a field closely related to environmental planning; and EXPERIENCE: Such as may have been gained through: employment in a position involving the performance of entry level professional work in the field of environmental planning. Or, any combination of education and experience that shall be substantially equivalent to the above education and experience." (Plaintiff's Ex. 1.)
This position was a bargaining unit position, particularly one within the Union. Pursuant to the Collective Bargaining Agreement ("CBA"), the State is required to give preference to Union members when filling entry level positions.[2]
Four bargaining unit members applied for the position.[3]
The Union members' applications were reviewed by a committee composed of Robert Sutton, Jr. (Chief of DEM's Office of Planning and Development), Lisa Primiano (Supervisor of Land Conservation and Acquisition Program), and Patricia Aguiar (Human Resources Specialist). Based on the applications alone, the committee determined that the bargaining unit members were not sufficiently qualified for the position, and thus were given rejection letters without an opportunity for an interview. (Plaintiff's Ex. 8.)
Thereafter, the State interviewed three non-bargaining unit individuals who had also applied for the position. One candidate, Lillian Shuey,[4] indicated on her application that she did not have the degree that was requested in the vacancy notice, as she only possessed a Bachelor's degree in English. (Plaintiff's Ex. 10.) Nonetheless, Shuey was given an interview to explain her credentials more fully. Following the interview process, the State appointed Shuey as Environmental Planner.[5]
In response to the State's hiring of Shuey and its refusal to interview any of the four bargaining unit members, the Union filed a grievance. The parties could not resolve the matter during the course of their grievance procedure, and the matter was submitted to arbitration. At the arbitration hearing, the Union contended that pursuant to the CBA, the State is required to select a minimally qualified bargaining unit employee for a vacant position before it is allowed to consider outside applicants. The Union argued that the four bargaining unit applicants were qualified for the position, and consequently, one of those four should have been selected for the position. The State maintained that the bargaining unit applicants were not minimally qualified and thus, the hiring of a non-Union member was appropriate. Further more, the State informed the arbitrator that Shuey had since left the position of Environmental Planner to attend graduate school.
On December 3, 2002, the arbitrator issued his decision, finding that "[t]he State violated the provisions of Article 11 and Article 32 by not affording an interview to the four (4) bargaining unit applicants who sought the [Environmental Planner] position." (Plaintiff's Ex. 13, Def.'s Ex. A.) The arbitrator found that the State did not act in a fair and reasonable manner in attempting to comply with the bargaining unit when it interviewed non-bargaining unit applicants but not any bargaining unit candidates. According to the arbitrator, "[w]hile State supervisors determined from their application materials that none of the grievants had the requisite training and experience for the [Environmental Planner] position, bargaining unit candidates should have had an opportunity to articulate their qualifications in an interview as did Ms. Shuey." Id. Consequently, the arbitrator issued the following award:
 "The State violated the collective bargaining agreement when it did not appoint one of the grievants . . . to the position of Environmental Planner. The State shall interview the four (4) bargaining unit applicants to determine their qualifications for the Environmental Planner position, in addition to considering other documents that they submitted at the time of their applications. The Environmental Planner position is vacated until such time as the four (4) bargaining unit applicants are reconsidered for the Environmental Planner position, by the State following interviews of them." Id.
Shortly after the award was issued, on December 20, 2002, the State wrote a letter to the Union informing it that the State believed the matter was moot.[6] According to the State, after Shuey vacated the position, the Environmental Planner position was abolished for budgetary reasons. Consequently, the State argues that it would be irrational to comply with the order by interviewing the bargaining unit candidates for a position that no longer exists. Despite this letter, in June 2003, the Union filed a motion to confirm the arbitrator's award pursuant to G.L. 1956 § 28-8-7. The State objected to the motion for confirmation, and the matter is now before this Court for decision.
 Standard of Review
Initially, it must be noted that the Union has not filed a motion to vacate the arbitrator's award; instead, it has simply objected to confirmation of the award. The Supreme Court of Rhode Island has held that an arbitrator's award must be confirmed unless it is vacated. Desjarlais v. USAA Insurance Co.,818 A.2d 645, 647 (R.I. 2003) ("[A]n order confirming an arbitration award must be granted `unless the award is vacated, modified or corrected, as prescribed in §§ 10-3-12 — 10-3-14.'" (citing §10-3-11)). Since the State is asking this Court to refuse to confirm the award, this Court will apply the standard of review of a motion to vacate.
It is well settled that the judicial review of an arbitration award is very limited.[7] Liberty Mutual Insurance Co. v.Tavarez, 797 A.2d 480, 484 (R.I. 2002). Generally, "absent a manifest disregard of a contractual provision or a completely irrational result, the [arbitration] award will be upheld."Providence Teachers Union v. Providence School Bd.,725 A.2d 282, 283 (R.I. 1999) (citing Rhode Island Brotherhood ofCorrectional Officers v. State Dep't of Corrections,707 A.2d 1229, 1234 (R.I. 1998)). A reviewing court should determine only whether or not the arbitrator considered the appropriate sources when fashioning the award, namely the contract and those circumstances out of which comes the "common law of the shop."Rhode Island Council 94 v. State, 456 A.2d 771, 773 (R.I. 1983). The Court is not to determine whether the arbitrator "resolved the grievance properly." Id. Even where the arbitrator has misconstrued the contract or the underlying law, it is still not sufficient grounds for a court to strike down the award. Jancito v. Egan, 120 R.I. 907, 911, 391 A.2d 1173, 1175
(1978).
The judicial authority of the Superior Court to review or vacate an arbitration award in labor disputes is limited by §28-9-18. That Section requires a trial justice to vacate an arbitration award:
 "(1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13."
 Section 28-9-18 (a).
An arbitrator exceeds his or her powers if the award fails to "`draw its essence' from the agreement, if it was not based upon a `passibly plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." Woonsocket Teachers' Guild, Local 951, AFTv. Woonsocket School Committee, 770 A.2d 834, 837 (2001) (quoting State Department of Children, Youth and Families v.Rhode Island Council 94, 713 A.2d 1250, 1253 (R.I. 1998)). Thus, "[n]otwithstanding this deferential standard of review, a court may vacate an arbitration award that manifestly disregards a contractual provision or yields an irrational result." RhodeIsland Council 94 AFSCME, AFL-CIO, 714 A.2d at 588. The burden of proving that an arbitrator's decision and award represents a manifest disregard of the provisions of the collective bargaining agreement or concludes therefrom an irrational result, is upon the party objecting to judicial confirmation of the arbitrator's decision. Coventry Teachers' Alliance v. Coventry School Comm.,417 A.2d 886, 888 (R.I. 1980).
 Analysis
The State argues that this Court should not confirm the arbitrator's award because the matter is moot. According to the State, because the position of Environmental Planner has been abolished, it would be irrational to interview the four bargaining unit members for a non-existing position. However, for the reasons set forth below, this Court finds that the arbitrator's award is not moot and even if it were, the motion to confirm is still hereby granted.
The Supreme Court of Rhode Island has consistently held that "[a] case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." RhodeIsland Dep't of Corrections v. Rhode Island Brotherhood ofCorrectional Officers, 866 A.2d 1241, 1246 (2005). However, even if a controversy is moot, if certain conditions are established the controversy will remain subject to judicial review. The Supreme Court of Rhode Island "will review an otherwise moot case only if the matter is of extreme public importance and likely to recur in such a way as to evade judicial review." AssociatedBuilders Contractors of Rhode Island, Inc. v. City ofProvidence, 754 A.2d 89, 90 (R.I. 2000). "[C]ases demonstrating extreme public importance are usually matters that relate to important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." Id.
at 91 (citing Sullivan v. Chafee, 703 A.2d 748, 753 (R.I. 1997)).
However, while the Court does have limited review over cases that are moot, the Court must take caution when finding a controversy moot. For instance, "the voluntary cessation of an activity may not necessarily moot the remedy of injunctive relief." Tanner v. Town Council of the Town of East Greenwich,880 A.2d 784, 795 n. 11 (R.I. 2005). Likewise, while a case should be dismissed as moot if the court cannot grant any effectual relief whatsoever in favor of a party, the available remedy does not need to be fully satisfactory to avoid mootness.Calderone v. Moore, 518 U.S. 149, 150 (1996). "To the contrary, even the availability of a `partial remedy' is `sufficient to prevent [a] case from being moot.'" Id. (citing Church ofScientology of Cal. v. United States, 506 U.S. 9, 13 (1992).
Furthermore, courts have been particularly reluctant to find a matter moot and beyond judicial review if it concerns a labor dispute. One reason for this reluctance is that "labor conflicts are the sort of disagreements likely to be repeated in the future." CSX Transportation, Inc. v. Brotherhood of Maintenanceof Way Employees, 327 F.3d 1309, 1319 (11th Cir. 2003). In fact, it has even been held that "underlying labor disputes presumably remain `live,' although they might be settled or abandoned by the parties in the meantime." Id. The likely reason for these findings is the fear that similar controversies may later arise between the employer and employees; therefore, while a particular matter may be resolved, the illegal conduct could possibly reoccur.
Here, this Court finds that the arbitrator's award is not moot. The Award ordered the State to vacate the position of Environmental Planner and to interview the four bargaining unit employees. Nowhere in the Award was the State ordered to hire one of the employees; in fact, if after interviewing the candidates none was still found to possess the requisite qualifications, the State would have no duty to hire any of the applicants and reinstate the Environmental Planner position. Thus, the fact that the position is nonexistent is material to filling the position but immaterial to resolution of the grievance for violation of the CBA. The State could comply with the specific terms of the Award by interviewing the four applicants. As the State can partially fulfill the terms of the Award by interviewing the candidates, the Award is not moot.[8]
In addition, the arbitrator's award is not moot because enforcement of the Award creates the possibility that other claims and damages may become available to the bargaining unit applicants. For example, assume that the State complies with the Award and upon interviewing the applicants finds that one (or more) of them was fully qualified and should have been hired for the position when it was initially posted. If that bargaining unit member would have thus been hired, he or she may be entitled to the back pay he or she would have received during the time the position was operational. In Rhode Island Dep't of Corrections,866 A.2d at 1247, the Supreme Court of Rhode Island found that an arbitrator's award was not moot when an individual could be entitled to back pay for a position for which state wrongfully failed to hire him. The applicant had since left state employment and accepted employment elsewhere. The state argued that the matter was moot and the arbitrator's award should not be confirmed, as the grievant was gainfully employed in another position. The Court rejected this argument and found that because the grievant could leave his new position to take the job he applied for and because of the possibility of back pay for the time he would have been working at the position, the case was not moot. Similarly here, the matter is not moot simply because the position of Environmental Planner cannot be presently filled. If the bargaining unit members may have been hired after an interview and thus are deserving of back pay, they have a continuing stake in the controversy, and confirmation of the Award should not be declared moot. "The fact that one remedy . . . may have been rendered moot does not affect the viability of the case or the remaining remedies." Tanner,880 A.2d at 794-95. Here, although the remedy of being placed into the position of Environmental Planner is moot, other remedies remain, thereby conferring the applicants with a continuing stake in the controversy; consequently, the matter is not moot.
This Court also finds that the conduct engaged in by the State is capable of repetition yet evasive of judicial review. Labor conflicts in particular are likely to be repeated in the future.CSX Transportation, Inc., 327 F.3d at 1319. Here, the actions of the State are easily capable of repetition if the arbitrator's award is not confirmed. The State could again disregard the terms of the CBA when it selects candidates for positions that become available. As the arbitrator's award interprets the CBA, it will help to prevent the same action from reoccurring. Furthermore, the Supreme Court of Rhode Island has found that where the matter is of extreme public importance, such as a matter concerning a person's livelihood, the Court will not deny judicial review on mootness grounds. Associated Builders Contractors of RhodeIsland, Inc., 754 A.2d at 91. The matter here involves the livelihood of the bargaining unit members because the Award concerns their ability to obtain employment in accordance with the terms of the CBA. As the matter concerns extreme public importance, specifically the State following the CBA when it fills vacancies, any mootness that may exist will not prohibit this Court's review.
Moreover, this Court finds persuasive the reasoning of courts from other jurisdictions that have recognized a distinction between the confirmation of an arbitrator's award and compliance with that award. For example, in American Nursing Home v. Local144 Hotel, Hospital, Nursing Home, the United States District Court for the Southern District of New York found that an arbitrator's award, even if it had already been complied with or was incapable of being complied with, could be confirmed. 1992 U.S. Dist. LEXIS 2399, at *8-9 (S.D.N.Y. Mar. 4, 1992). In that case, an employer argued that the arbitrator's award, in which the employer was ordered to pay employees a certain sum, should not be confirmed when the employer had already paid the employees; in other words, it argued that a moot matter could not be confirmed. Id. at *8. However, the court found that a confirmation of an award is not the same as a court ruling that the arbitrator's award must be fulfilled. The court stated that
 "The issue of compliance and confirmation are distinct from each other. A court may confirm an arbitration award even in the absence of a showing of non-compliance. Confirmation, therefore, is not a novel inquest into the merits of the award or compliance with it; in the absence of unique, statutorily prescribed circumstances, confirmation is appropriate." Id. at *9.
The reason for this distinction is clear: at the confirmation stage the court is simply to determine whether or not the arbitrator's award drew its essence from the agreement, if it was based upon a passably plausible interpretation of the contract, if it manifestly disregarded a contractual provision, or if it reached an irrational result. Woonsocket Teachers' Guild, Local951, AFT, 770 A.2d at 837. In other words, only the rationality and legality of the award, not whether the award has been or can be complied with, is at issue. The United States Court of Appeals for the Second Circuit clarified this point when it recognized the following:
 "Actions to confirm arbitration awards . . . are straightforward proceedings in which no other claims are to be adjudicated. `The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.' . . . [I]n a confirmation proceeding, the court properly may consider only the statutory bases for modifying or vacating an award and challenges to the awards clarity." (Citations Omitted). Ottley v. Schwartzberg, 819 F.2d 373, 377
(2nd Cir. 1987).
Furthermore, assuming arguendo that this matter was moot because of the State's inability to comply, compliance with an award has no bearing on whether it should be confirmed. Analogous to American Nursing Home, here the abolishment of the Environmental Planner position does not affect the Court's determination of whether the Award should be confirmed. If in the future, the Union seeks to enforce compliance with the Award, then the issue of mootness will be dispositive. However, as at this stage the Union seeks only confirmation of the Award, such compliance is not an issue.
Consequently, the Court may only refuse to confirm the Award if it finds that the arbitrator has engaged in conduct which warrants the Award to be vacated, as proscribed in § 28-9-18. The State has not argued that any such violations have occurred, and this Court cannot find any evidence in the record which would warrant the Award to be vacated. Therefore, this Court confirms the December 3, 2002 arbitrator's award.
 Conclusion
This Court finds that the arbitrator award is not moot as it can be adequately complied with and is capable of repetition. Furthermore, this Court finds that even if the arbitrator's award were moot, such would have no bearing on the Court's decision regarding whether the Award should be confirmed. As this Court finds that the arbitrator neither acted with manifest disregard to a contractual provision, nor was the Award completely irrational, the Award is hereby confirmed.
Counsel shall agree upon an appropriate form of order and judgment, reflective of this decision, and submit it to the Court forthwith for entry.
[1] The record and Exhibits from the arbitration proceeding were not available to the Court; consequently, the "facts" as recited in this opinion are gleaned from the arbitrator's decision, the parties' briefs, and from the exhibits that were attached to their case filings.
[2] Section 11-4d of the CBA sets forth the process for filling vacant positions by requiring that
 "Where no list exists for certification, all new and vacant positions shall be filled from within the bargaining unit wherein the new or vacant position exists from the top three seniority employees, or if there are less than three eligible employees therein, from the top three state seniority employees from within any other bargaining units covered by the Master Agreement. Whenever there are less than three eligible applicants from within any bargaining units covered by the Master Contract for vacancy, the State may repost such vacancy."
Furthermore, Section 32-1 provides the following:
 "The State and the union recognize the need for the development and training of employees to fulfill the State's workforce requirements for maintaining the efficiency of operations, quality, and service. The State subscribes to the principles of career ladders and promotions from within its organization. The State agrees to establish an education and training committee to consider the needs of State employees in this area of concern."
[3] Those bargaining unit applicants were Thomas Iarossi (DEM employee working as engineering technician), Douglas Campbell (DEM environmental quality technician), Kerri Mella (Senior Natural Resources Specialist), and Daniel Lawton (Division of Agriculture and Resource Marketing employee). (Plaintiff's Ex.'s 3-6.)
[4] Shuey, while not a bargaining unit member, had been serving as an Assistant in the Rhode Island State Land Conservation and Land Acquisition Program.
[5] The position was first offered to Gregory Harris, who also was not a member of the bargaining unit, but Harris declined the position as he had already found employment elsewhere.
[6] This letter reads in part:
 "While the Department certainly could interview the remaining bargaining unit candidates, there is no Environmental Planner position for which to interview them or place them in even assuming one of these four should meet the minimum qualifications. As a result of these developments, it would seem that the award is moot. If we conducted the interviews, and selected one of the four, and awarded that person the position based on the award, that person immediately would have to be laid off. It would seem that this result, even if it were legally required, is not to the benefit of either that individual or the union." (Plaintiff's Ex. 14, Def.'s Ex. B.)
[7] Judicial deference to an arbitrator's decision reflects the philosophy that "broad judicial review in this area undermines the strong governmental policy encouraging the private settlement of labor grievances through the relatively inexpensive and expedient means of arbitration." Rhode Island Council 94, AFCME,AFL-CIO v. State, 714 A.2d 584, 588 (R.I. 1998).
[8] The state cannot entirely fulfill the Award because such would require the State to vacate the Environmental Planner Position until such interviews are taken. However, because the position has already been abolished, this portion of the Award in essence has been satisfied. The interviews, though, have yet to be conducted, and for that reason the Award is not moot.